IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RICHARD M. SMITH     )
            )
            )
            )
  v.         )   CASE NO. 2:23-CV-00745-RAH
            )
UNITED STATES OF AMERICA  )
            )

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Richard M. Smith's Motion to Vacate under 28 U.S.C. § 2255 which collaterally attacks his sentence in *United States v. Smith*, No. 2:19-cr-00122-RAH-JTA (M.D. Ala. Feb. 3, 2022). The Motion will be denied.

## BACKGROUND

On March 12, 2019, Smith was indicted on four counts—conspiracy to distribute and possess with the intent to distribute a controlled substance (cocaine powder), possession with the intent to distribute a controlled substance (cocaine powder), possession of a firearm during and in relation to a drug-trafficking crime, and a money-laundering conspiracy. Smith's wife was also charged in the conspiracy. A superseding indictment added a co-defendant (Ronnie White) and an additional charge against Smith for the use of a communication facility to further the conspiracy.

Smith and his wife proceeded to trial in June 2021. The other co-defendant pled guilty and testified against Smith. The jury returned a guilty verdict against Smith on four counts, and a not guilty verdict on the money laundering conspiracy count.

During his initial sentencing on December 7, 2021, Smith submitted a

handwritten motion to dismiss the indictment and discharged his retained counsel, Preston Presley and Wesley Pitters, for claimed performance issues. The sentencing was thus continued to a later date so that Smith could obtain new counsel and review the presentence report. Smith retained new counsel and his sentencing proceeded on February 2, 2022. He received a total sentence of 145 months, which included an 85-month sentence on the conspiracy and drug counts plus an additional 60 months on the firearm count.

Smith appealed to the Eleventh Circuit, focusing only on his pre-trial suppression motion which had been denied. Smith did not raise any claimed error during the trial or sentencing. On December 27, 2022, the Eleventh Circuit affirmed this Court's denial of Smith's suppression motion, finding that "the officer had sufficient evidence supporting a reasonable suspicion that Smith was transporting drugs to a dealer in the area, warranting the extension of the traffic stop and detention of Smith." *United States v. Smith*, No. 22-10489, 2022 WL 17958923, at *1 (11th Cir. Dec. 27, 2022) (per curiam). Smith's conviction was therefore affirmed.

On December 27, 2023, Smith filed the instant Motion to Vacate pursuant to 28 U.S.C. § 2255, in which he asserts six instances of alleged ineffective assistance of counsel (1) "by failing to file a Motion in Limine or object to an unlawful wiretap extension authorization, which included phone calls from Petitioner"; (2) "failing to object to prejudicial testimony that was introduced at trial" from two witnesses—Patricia Hill and Karl Oroz; (3) "by failing to adequately investigate"; (4) "by failing to object to jurors with memory issues and sleeping during trial"; (5) "by failing to adequately consult with Petitioner regarding his trial and sentencing"; and (6) by failing "to argue any of the issues presented in this Petition related to Petitioner's trial and sentencing."

The Government argues that Smith's ineffectiveness claims are without merit.

## LEGAL STANDARD

Under § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under § 2255 are extremely limited. *See United States v. Frady*, 456 U.S. 152, 165 (1982). A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States; (2) exceeded its jurisdiction; (3) exceeded the maximum authorized by law; or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "[R]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (cleaned up).

The law is well established that a district court need not reconsider issues raised in a § 2255 motion which have been resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under § 2255. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *See Sanders v. United States*, 373 U.S. 1, 16 (1963) ("[I]dentical grounds may often be proved by different factual allegations . . . [or] supported by different legal arguments . . . or be couched in different language . . .

or vary in immaterial respects." (citations omitted)).

Because a motion to vacate under § 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a § 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234; *McKay*, 657 F.3d at1195. An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994)). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a § 2255 motion unless the defendant establishes one of two exceptions. As to the first, the defendant must show (1) cause for not raising the ground on direct appeal and (2) actual prejudice resulting from the alleged error. *Id.* at 1234. Alternatively, a court may consider the ground if the defendant shows that he is "actually innocent." *Id.*

To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [the defendant's] own conduct." *Id*. at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin,* 694 F.3d 1, 8 (11th Cir. 2012). In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying *Strickland*, a court may dispose of an

ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.,* 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted). "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect. *Id.* at 1316 & n.18.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333 (11th Cir. 2012).

With regard to the prejudice requirement, a defendant must establish that, but

for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). For a court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313 (quoting *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc)). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b);

*Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon*, 518 F.3d at 1301. Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. *Gordon*, 518 F.3d at 1301. To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief. *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are 'patently frivolous,' 'based upon unsupported generalizations,' or 'affirmatively contradicted by the record'" (quoting *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989)). Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239. Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

## DISCUSSION

In his Petition, Smith points to six decisions taken by his trial counsel that allegedly rendered their assistance ineffective. These will be addressed in turn, and none of them warrants relief.

\* \* \* \* \*

In ground one, Smith argues that his trial counsel was ineffective "by failing to file a Motion in Limine or object to an unlawful wiretap extension authorization, which included phone calls from Petitioner." (Doc. 7-1 at 5.)[1] In particular, Smith argues that "probable cause did not exist to warrant the initial wiretap or extension" and that trial counsel "failed to make reasonable efforts to exclude this evidence, which resulted in deficient performance and resulted in prejudice against Petitioner

---

[1] Unless otherwise noted, the docket citations in this Order correspond to Case No. 2:23-cv-745.

by allowing such evidence to be introduced to the jury." (*Id.* at 7.)

In response, the Government states that the wiretaps were authorized by a federal judge based on a probable cause affidavit, that the order was based on a wiretap of someone else's number, that Smith lacks standing because it was a wiretap of someone else's number, and that Smith has not shown how such a motion or objection would have been successful.

The Court agrees. Smith has not shown how any such motion would have been successful. In fact, the wiretap authorization was issued by a federal judge as it concerned co-defendant Ronnie White's phone number, and Ronnie White later pleaded guilty to a charge of drug distribution. Smith's involvement became known because of that wiretap. Smith has not shown the initial authorization as to Mr. White was defective or lacking in any format or substance. And he certainly has not shown how his retained counsel could have objected, let alone even been aware of, an ongoing application for a wiretap authorization given the confidentiality of those proceedings prior to Smith's subsequent traffic stop and arrest.

Finally, Smith, through counsel, did file a motion to suppress the evidence gathered at the traffic stop (Cr. No. 35), but that motion was denied by the magistrate judge (*see* doc. 137), affirmed by this Court over Smith's objection (*see* doc. 151), and affirmed by the Eleventh Circuit on appeal (*see* doc. 295), as all three courts concluded there was sufficient reasonable suspicion to investigate drug trafficking based on the totality of the circumstances, which included the wiretaps and the events during the traffic stop itself. There is simply no evidence or grounds to support Smith's claims here, and he is therefore not entitled to relief on this claim.

* * * * *

In Ground Two, Smith argues that his trial counsel was ineffective for "failing to object to prejudicial testimony that was introduced at trial" from two witnesses—

Patricia Hill and Karl Oroz. (Doc. 7-1 at 7-8.) According to Smith, his attorneys should have but did not object to four questions the prosecutor asked of Hill. The testimony centered on the point that persons involved in illegal drug distribution, i.e., drug dealers, often carried loaded guns. Smith claims this testimony was unnecessary and prejudicial because it called him a drug dealer before the jury and because Smith was in the military and held a valid pistol permit. In a similar fashion, Smith argues that his counsel should have objected to the testimony from Oroz, a special agent who investigated financial crimes with the I.R.S. and U.S. Treasury, who testified that it could be inferred that certain cash deposits were related to drug proceeds. (*Id*. at 8-9.) According to Smith, Oroz's testimony was prejudicial and speculative.

Smith's claims are without merit. This type of testimony is generally admissible because it provides probative contextual evidence as to why Smith likely possessed the firearm. The testimony showed that the firearm was not there by chance and could possibly facilitate drug trafficking. And it is also probative contextual evidence of money laundering from illicit drug sales in that large cash deposits are indicative of the drug trade and were made in such a way as to not trigger federal reporting.

The Eleventh Circuit has repeatedly upheld the admissibility of law enforcement testimony on the relationship between guns, large cash deposits, and drug distribution. Based on their training and experience, certain witnesses, like forensic accountants and law enforcement officers, have knowledge not within the scope of knowledge of the average lay person. The Eleventh Circuit has held that a "witness is permitted to deliver a lay opinion testimony based on his professional experiences." *United States v. McLellan*, 958 F.3d 1110, 1114 (11th Cir. 2020) (quoting *United States v. Williams*, 865 F.3d 1328, 1341 (11th Cir. 2017)). This principle allows law enforcement officers to testify to the relationship between drugs

and guns and likewise allows forensic accountants to testify to the relationship between drugs and large sums of cash. *United States v. Carillo-Ayala*, 713 F.3d 82, 92 (11th Cir. 2013); *United States v. Pham*, 463 F.3d 1239, 1246 (11th Cir. 2006); *Williams*, 865 F.3d at 1342; *see also Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd.*, 320 F.3d 1213, 1223 (11th Cir. 2003) (holding law enforcement witnesses are permitted to offer lay testimony "based upon their particularized knowledge garnered from years of experience within the field"); *United States v. Stahlman*, 934 F.3d 1199, 1223 (11th Cir. 2019) (permitting an FBI agent to offer lay testimony about the nature of an online classified ad in a sex-crimes case); *United States v. Tinoco*, 304 F.3d 1088, 1119 (11th Cir. 2002) (permitting an officer to offer his characterization of a vessel as a "go-fast" boat); *United States v. Novaton*, 271 F.3d 968, 1008–09 (11th Cir. 2001) (permitting officers to offer lay testimony about the meaning of coded terms in a drug-trafficking case); *cf. United States v. Garcia*, 447 F.3d 1327, 1334–35 (11th Cir. 2006) (district court did not err in permitting expert testimony from law enforcement about the operations of narcotics dealers or the interpretation of drug codes and jargon under Rule 702). Applying this principle, the Eleventh Circuit has noted the admissibility of testimony concerning the connection between drug distribution and firearms over objections of relevance, prejudice, and speculation. And that same principle equally applies as to the connection between drug distribution and money laundering.

In addition, even if the testimony was more prejudicial than probative, any error was harmless because Smith had ample opportunity to, and did, address the issue of his possession of a firearm and large cash deposits with the jury. On the firearm, he testified that his possession of the firearm was related to his military service, and as to the cash deposits, he tied them to his wife's restaurant business. If the jury had accepted Smith's version of events that Hill had testified that drug dealers often use firearms would not have swayed their verdict. Thus, Hill's

testimony, designed to aid the jury's understanding of the drug business, was permissible, and Smith's attorney did not provide ineffective assistance by failing to object. And as to Oroz's testimony, Smith certainly was successful in rebutting it, as the jury acquitted him of the money-laundering charge. Given the acquittal, Smith has not shown prejudice and Smith's counsel certainly was not ineffective.

* * * * *

In his third ground, Smith argues that counsel was ineffective "by failing to adequately investigate." (Doc. 7-1 at 9.) In particular, Smith states that counsel "did not adequately review the dash cam footage related to Petitioner's arrest" because the magistrate judge in her recommendation stated that the pat down was not within camera range. According to Smith, this was incorrect because the footage actually showed that the search was within the camera range and therefore his attorneys should have brought this to the judge's attention and should have shown this video at trial since it supported Smith's version of events. (*Id.*)

The Government disputes Smith's assertion. It states that there is no other dash camera footage, let alone footage that support's Smith position that drugs were not found on his person.

Smith's claim largely focuses on the magistrate judge's actions in denying Smith's suppression motion. Smith asserts that the magistrate judge's order contradicts the video evidence, and therefore Smith's counsel should have brought this to the judge's attention and should have shown it at trial. Smith's argument is wrong. The magistrate judge correctly described the contents of the video, referencing it in the suppression order and broadly discussing what it showed. That discussion included, contrary to Smith's assertion, that the pat down *was* within camera range.

Further, the Court notes that Smith's counsel objected to the Magistrate Judge's suppression order (*see* Cr. No. 137), which triggered this Court's review.

This Court also reviewed the video and notes that the video not only shows Smith's arrest but also the pat down search including the discovery of illegal drugs on Smith's person.

To the extent Smith argues this video should have been shown to the jury, the video was shown to the jury in substantial part, including the pat down and arrest. (Doc. 288, at 88, 90–112.) It is true that the entirety of that video was not shown to the jury. However, the video shown depicted the discovery of the drugs on Smith's person.

Smith does not explain which parts of the video should have been shown to the jury and what it would have shown. In this collateral proceeding, Smith must show the exact manner in which his legal counsel was inadequate at trial with respect to the video and how the video portions that were not shown would have resulted in a different outcome. Smith must provide evidence, not mere conclusory allegations, that counsel overlooked exculpatory information. Smith does not meet his burden here. The video was shown to the jury, and the jury was permitted to draw whatever inferences from it that could be drawn. Smith has not shown how the result would have been different here or how his counsel acted unreasonably as it concerns the video. And to the extent Smith claims there is some other video in existence that would have shown something different, this assertion is vague, conclusory, and completely lacking in evidentiary support as to both its existence and what it would show. This claim is without merit.

* * * * *

In his fourth ground, Smith argues his counsel was ineffective "by failing to object to jurors with memory issues and sleeping during trial." (Doc. 7-1 at 10.) In particular, Smith states there was one juror who had memory issues and another who was asleep during trial, that he pointed out the sleeping juror to his attorney, and that his attorney never objected. This, according to Smith, prejudiced him because these

12

jurors "were not wholly aware of the evidence presented in this case." (*Id.*)

As the Government notes, Smith's assertion lacks any basis. Smith does not identify the jurors or give any description of the jurors' identities, or at what point during the trial that Smith claims the juror was sleeping.

It is true that a sleeping juror may prejudice a criminal defendant by denying that defendant a fair trial. *See United States v. Freitag*, 230 F.3d 1019, 1023 (7th Cir. 2000); *United States v. Barrett*, 703 F.2d 1076, 1082–83 (9th Cir. 1982); *Hammonds v. Allen*, 849 F. Supp. 2d 1262, 1311 (M.D. Ala. 2012). *But see Ciaprazi v. Senkowski*, 151 F. App'x 62, 63–64 (2d Cir. 2005) (holding that trial counsel's decision not to object to a possibly sleeping juror may have been a reasonable strategic decision). In the Eleventh Circuit, "defense counsel [has] a duty to call a juror's inattentiveness to the court's attention when first noticed." *United States v. Curry*, 471 F.2d 419, 422 (5th Cir. 1973) (citation omitted).[2] But Smith utterly fails to prove this issue from the record,[3] and fails to show how he was prejudiced by his counsel's failure to timely object to the allegedly sleeping jurors. His argument and the record lack any particulars as to the identity of the jurors, the stage of the trial during which the jurors were asleep, what testimony and evidence the jurors would have missed, the duration of the jurors' sleep.

In *United States v. Mathis*, 554 F. App'x 856 (11th Cir. Feb. 6, 2014)(per curiam), the Eleventh Circuit declined to address the defendants' arguments that their attorneys were ineffective because the Eleventh Circuit found that the defendants "failed to develop a record that would allow [it] to evaluate [the

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[3] During trials, including this one, the Court regularly scans the jury to determine their attentiveness. Here, the Court did not observe any sleeping jurors.

defendants'] arguments that their attorneys should have made a 'formal motion to remove or object . . . to the presence of the sleeping juror.'" *Id*. at 856 (quoting *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002)). Smith likewise failed to develop a record sufficient for this Court to evaluate his claim.

Finally, on this point, Smith has not shown how the outcome of the trial would have been different. The evidence against Smith was overwhelming. The jury was unanimous in its decision, and it considered all of the evidence since Smith was acquitted of one count.

* * * * *

In his fifth ground, Smith argues that his counsel was ineffective "by failing to adequately consult with Petitioner regarding his trial and sentencing." (Doc. 7-1 at 10.) According to Smith, prior to the sentencing hearing, he and his family were unable to get in touch with his retained counsel and that counsel had not reviewed his sentencing report with him. Smith claims this was a deficient performance and prejudiced him.

Smith's argument is without merit. First, Smith fails to show what prejudice or harm occurred as a result of this claimed lack of communication. Second, Smith's claim appears to be focused on his presentence report. At his sentencing on December 7, 2021, when he was represented by Preston Pressly and Wesley Pitters, Smith complained that his then-counsel failed to show him or consult with him about the presentencing report to the level he thought appropriate. His then-counsel disputed the assertion. Smith then terminated them on the spot. To afford Smith sufficient time to retain new counsel, review the presentencing report, and lodge whatever objections he deemed appropriate, his sentencing was continued to a later date.

His sentencing was then reset to January 21, 2022, and then reset at Smith's request to February 2, 2022. In the interim, Smith retained new counsel, Anwar

Taylor. On Smith's behalf, Mr. Taylor filed a sentencing memorandum and requested a downward variance. In his sentencing memorandum, Mr. Taylor advanced numerous objections and responses to the presentence report. And those were all addressed at the sentencing.

Smith's sentencing, with the assistance of Mr. Taylor, proceeded on February 2, 2022. There was extensive discussion about the evidence at trial and the presentence report, and Smith gave an allocution. Unlike the first sentencing, Smith voiced no objection or problems with his new counsel and made no complaint about the lack of opportunity to speak with his new counsel about the presentence report. Instead, to the extent Smith spoke, he insisted that the video did not show any drugs being taken from him during the pat down search. Then, at the conclusion of the sentencing, when asked whether there were any objections, Smith objected only to the assessment of a fine.

Smith has not shown ineffective assistance from his legal counsel on this issue. Nor has he shown prejudice. Assuming the truth of his statements about his previous counsel, any concerns were addressed when Smith was allowed to retain new counsel and his sentencing hearing was reset for a later date. As such, Smith has not met his burden here.

* * * * *

In his sixth and final ground, Smith claims his appellate counsel "failed to argue any of the issues presented in this Petition related to Petitioner's trial and sentencing, which constitutes a deficient performance that prejudiced Petitioner by failing to preserve these issues during the appeals process and prohibiting Petitioner from previously receiving relief." (Doc. 7-1 at 12-13.) He further states that counsel "abandoned the issue of the second pat down's legality" and that counsel failed to show that "Lieutenant Dunn's testimony that he could smell cocaine was 'incredible as a matter of law.'" (*Id.* at 13.)

15

This argument is largely a rehash of the other arguments. And since none of those support an ineffective assistance claim, they certainly do not support such a claim on appeal. Thus, counsel cannot be deemed ineffective for failing to raise an issue which has no merit. Indeed, it is professionally reasonable for a lawyer to fail to pursue issues which have little or no chance of success, and a criminal defendant is not prejudiced by counsel's failure to pursue non-meritorious claims or those on which they likely would not have prevailed.

Outside of that, Smith's argument is far too vague to provide grounds for relief. And to the extent he bases a claim on the credibility of law enforcement officer's testimony that he could smell cocaine, that was a credibility issue considered by the jury, and it was within the province of the jury to determine the weight to give that testimony. Issues that go to the credibility of the witnesses do not support an ineffective assistance claim, especially in the context that Smith raises it here. And to the extent this claim goes back to the traffic stop and search itself, it was made the basis of Smith's suppression motion which was filed by Smith's counsel, argued to the magistrate judge and this Court, ruled upon by the magistrate judge and this Court, and then examined by the Eleventh Circuit on appeal. Smith has raised no meritorious claim on this issue. At best, this is just another attempt to directly attack the suppression issue, which is not appropriate for habeas relief.

## EVIDENTIARY HEARING

Smith is not entitled to an evidentiary hearing because he has not alleged specific facts that, if true, would entitle him to habeas relief. *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 763 (11th Cir. 2010) ("Having alleged no specific facts that, if true, would entitle him to federal habeas relief, [Petitioner] is not entitled to an evidentiary hearing.").

## CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** as follows:

1)     Petitioner Richard M. Smith's Motion to Vacate under 28 U.S.C. § 2255 (doc. 1) is **DENIED**;

2)     To the extent Smith seeks a certificate of appealability, the request to proceed on appeal i**s DENIED** because Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–85 (2000); and

3)     The Clerk is directed to **CLOSE** this case and mail a copy of this Order to Petitioner at the address of record.

**DONE** and **ORDERED** on this the 28th day of January 2026.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE